## LULICH v. INDUSTRIAL COMMISSION et al.

No. 5408.  Decided December 12, 1934.  (38 P. [2d] 291.)

For opinion on rehearing see 86 U. 605, 47 P. (2d) 893.

*Allen T. Sanford* and *Harry G. Metos,* both of Salt Lake City, for plaintiff.

*Joseph Chez, Attorney General,* and *A. R. Barnes,* of Salt Lake City, for defendants.

STRAUP, Chief Justice.

This is a review of a proceeding of the Industrial Commission under our Workmen's Compensation Act. A workman under the name of Joe Melich as a miner was in the employ of the Standard Coal Company operating a coal mine or mines in Carbon county. He, on September 22, 1928, was killed, admittedly in the course of his employment. He had been in the employ of the company only about 2 days.

Kate Lulich, residing at Perusic, Austria, now Yugoslavia, claiming the true name of Joe Melich to be Joe Lulich, and she his widow and a dependent, through consul at Yugoslavia communicating with consul at San Francisco, in due time, in 1929, filed an application with the commission for compensation, alleging she was the widow of the deceased and dependent upon him for support. Whether she was the widow and a dependent was the only issue tried. Ten hearings were had before the commission between 1929 and 1932; the first two or three the applicant being unrepresented by counsel. The hearings were continued from time to time to give the parties opportunity to produce further evidence; the last six or seven hearings the applicant being represented by counsel. The company was represented by its counsel at all the hearings. In December, 1932, the commission on the evidence adduced by both parties made findings and conclusions and entered an order denying the applicant compensation. The findings show the business of the company; that it had in its service more than three workmen; that it was a self-insurer; that Joe Melich, sometimes referred to as Joe Lulich, was an employee and was killed in the course of his employment, stating the circumstances with respect thereto, and the wages earned by him. But as to the real and only issue in the case the commission merely found "that applicant herein," Kate Lulich, "has not discharged her burden of proof that the said Joe Melich (or Lulich) who was fatally injured at Standardville, Utah, on September 22, 1928, was her husband and that she was dependent upon deceased for maintenance and support." As

conclusions, the commission thus denied the applicant compensation, and ordered that the company pay $998.40 into the state treasury for the benefit of the state insurance fund as by Comp. Laws of Utah 1917, § 3140, as amended by Laws of Utah 1921, c. 67, provided, in case there are no dependents.

The applicant brought up for review a complete record of the proceedings, including a transcript of all the evidence and of all documents and papers filed in the cause. The record is voluminous, consisting of testimony of many witnesses, a number of depositions and of documents, letters, and other papers. There are but two quetsions presented for review: (1) Was the applicant the wife of the deceased? and (2) if so, was she a dependent? It is her contention that on the record both propositions are established without any substantial conflict, and that the conclusion reached by the commission to the contrary is against the evidence. While the commission made rather specific findings as to all material facts entitling an applicant to compensation, yet as to the real issue, the only issue, no facts are found; the commission merely stating or finding that the applicant had not discharged the burden of proof that Joe Melich or Lulich was her husband and that she was dependent upon him for support; in other words, the commission did not find whether the deceased was or was not the husband of the applicant or whether she was or was not dependent upon him for support. We are thus required to examine the whole record to ascertain what the facts are in such particular, and as to whether there is sufficient competent evidence to support the contention of the applicant, and, if so, whether there is sufficient competent evidence to the contrary justifying the conclusion reached by the commission.

That the applicant, Kate Lulich, was the wife of Joe Lulich is clearly established without dispute. By certified copies of births, deaths, and marriage records of the community and district of Perusic, it is shown that Joe Lulich and Kate Lulich were born in Perusic in 1867; that they were married

in 1895; that their eldest child, a son, Steve, was born in 1896, their youngest a daughter, Helen, in 1910. A certified copy of the marriage certificate showing the marriage in 1895 also was put in evidence. The deposition of the applicant and depositions of other persons and other testimony adduced show that Joe and Kate Lulich were born and reared in Perusic, that she lived there all her life, and that Joe Lulich lived there until he departed for America. The applicant further deposed that other children were born to them, issue of the marriage, but all had died except Steve and Helen. There is some discrepancy in the testimony as to the year or time Joe Lulich left Perusic for America. One or two witnesses testified it was in 1901 or 1903, but that Lulich at different times returned to the old country, but each time came back to America. The applicant deposed it was about 19 years prior to the taking of her deposition, which would be about 1911 when Lulich left for America, and that he at no time had returned. We regard the discrepancy in such particular of no particular importance, for the memory of witnesses in giving testimony looking back 20 years or more may well be at fault as to dates. That Joe Lulich was born and reared at Perusic, that he was married to Kate Lulich in 1895, and that he left the old country and came to America, is not disputed. Whether he left about the year 1911 as deposed by the applicant or in 1901 or 1903 as testified to by other witnesses is not of much consequence. His whereabouts in Chicago, Indiana, Montana, and especially at Bingham Canyon, Utah, were testified to by a number of witnesses who were acquainted with him; some of them knowing him at Perusic. As early as 1913 he was in Bingham Canyon, Utah, there working in mines as a miner and the name of the mines given in which he was employed. In 1915 a picture was taken at Bingham Canyon of a group of twenty or more Austrians and Servians, members of a fraternal and benefit society. The occasion was at a funeral of a member who was a nephew of Joe Lulich and Joe Lulich, though in the group, was not a member of the

society. A number of witnesses who well knew him pointed him out in the picture as the same person who came from Perusic and who was married to Kate Lulich. In the picture he had a mustache and when he left Perusic he also wore a mustache. The description of Joe Lulich as to nationality, complexion, height, weight, and color of his hair, was given by a number of witnesses. Testimony was given to show that Joe Lulich was in and out of Bingham Canyon between the years 1915 and 1926, working in mines elsewhere, in Idaho and Montana. In 1927 he again was back at Bingham. A witness engaged in the general merchandise business at Bingham testified that Joe Lulich from time to time deposited money with the witness, some in November, 1927, some in February, 1928, which at different times was withdrawn, the last, amounting to $300, withdrawn in March, 1928. Other witnesses testified that in 1928 Joe Lulich went to Carbon county to work in the mines. There was testimony given that at Bingham Canyon there were two other persons by the name of Lulich, but that was explained by the witness engaged in the mercantile business. He testified there was another person in Bingham by the name of Lulich; that his first name was Frank, but left Bingham in 1914; that there was another person whose "nick-name was Lulich," whose real name was Mike Cmokrak; that his pay checks were made out in that name; and that he, too, left Bingham in 1918 or 1919. From the testimony of such witnesses and other witnesses who well knew Joe Lulich, some of whom boarded with him at the same place and having knowledge that he was married and of the place where his wife lived, it clearly was shown that Joe Lulich was not Frank Lulich, nor Mike Cmokrak.

Further evidence was given to show that in 1924 a Joe Lulich as a miner made application with the "Butte Mutual Labor Bureau" for employment at mines at Butte, Mont. The date of the application was May 21, 1924. The application was signed by a mark (X). In the application it was stated that the applicant could neither read nor write Eng-

lish; that the birthplace of the applicant was Austria; that he was married; and that "the number of dependents, were a wife and two children," who resided in Austria. The description of the applicant stated on the back of the application by the person receiving the application is:

"Name, Joe Lulich; Age 50; Height 5' 8"; Color of Eyes, brown; Color of Hair, black; Weight, 160; Complexion, dark; Nationality, Austrian."

Such description corresponded with the description of Joe Lulich, the husband of Kate Lulich. He there worked in the mines in 1924 and in 1925.

A Joe Melich in August, 1925, also made application with the "Butte Mutual Labor Bureau" for employment as a miner. The application was signed by him in English. In the application it is stated that the age of the applicant was 38, birthplace, Auglin, Austria, that he was not married, was single, and that there was no one dependent upon him for support. His description, as stated on the back of the application by the person taking the application, was, "Joe Melich, Age 38; Height 5' 9"; Color of Eyes, brown; Color of Hair, brown; Weight 165; Complexion, medium; Nationality, Austrian." The statements in the application of the character and places of previous employment of that applicant in no particular correspond with the places where Joe Lulich previously was employed. Such applicant, Joe Melich, worked in the mines at Butte from February, 1925, to January, 1926, when he left, his whereabouts thereafter unknown to his employers.

As heretofore indicated, there is evidence to show that Joe Lulich in 1926, 1927, until March, 1928, off and on was in Bingham working in mines. There also is evidence to show that when he left Bingham he stated that he was going to Carbon county to get work in coal mines. In July, 1928, a Joe Melich was employed by the Sweet Coal Company operating a coal mine or mines in Carbon county. The application was made only on what is called a card system form. The written portion of it is in the handwriting of the clerk

of the company filling out the application. Therein it is stated that the nationality of the applicant was an Austrian; his occupation a miner; his age 43; dependents none; the person to be notified in case of accident, "Mike Baish, Sweet Mine." No other description was given. He left the employ September 12, 1928. The signature on the application purports to be the signature of the applicant, but it is apparent the signature was written by the clerk taking and filling out the application.

We come now to the application filled out of the employee under the name of Joe Melich who entered the employ of the Standard Coal Company at Standardville and who was killed in its employ and for whose death compensation is claimed by the applicant, Kate Lulich. The application is on a blank standard form. It was filled out September 20, 1928, in typewriting by a clerk of the company. It recites the name of the applicant as "Joe Melich, Age 45; Weight 155; Nationality Austrian; Where Born, Parucich"; previously worked in Bittersweet Mine, Butte, Mont., Sweet Mine (Carbon county) from July, 1928, to September 10, 1928; that he was married; "that his wife's name was Katie Melich"; that her address was "Parucich, Austria"; that she was dependent upon him for support to the extent of $200 a year; that he had two children, "Steve 25, Helen 21"; that, in case of accident, serious illness, or injury, "Friend, George Yokovich, Dines, Wyoming," was to be notified. The application was signed by the applicant's mark (X) and was witnessed. On the back of the application the description given by the physician who examined the applicant is stated the name of the applicant, "Joe Melich, a miner, Age 45; Height 5' 8"; Weight 155; Eyes dark; no mustache, no beard." That also was signed by the applicant by his mark, in the presence of the physician. It was shown Joe Lulich could neither read nor write. A striking resemblance is seen in the description of Joe Lulich as contained in the application on file with the Butte Mutual Labor Bureau in May, 1924, the application of Joe Melich filed with the Standard Coal Company

and who was killed while in the employ of that company, and the description of Joe Lulich, his height, weight, complexion, place of his birth, the address of his wife, and the names of his two children, as given by other witnesses, except as to age; the age stated in the application filed with the bureau in 1924 being 50, and in the application filed with the Standard Coal Company in 1928 being 45, the age of Joe Lulich in 1928 according to the certified records of his birth and the deposition of Kate Lulich being about 59.

A witness, a carpenter, a Servian, living a long time in this country and for some time residing at Helper, Carbon county, testified that he was acquainted with Joe Lulich; that in 1928 he saw him at the mining camp of the Sweet Mining Company in Carbon county, but did not know whether Lulich was working for the company or only there looking for a job; that Lulich at Helper boarded at the same place the witness boarded, and did not know that Lulich had gone by the name of Melich; that Lulich in 1928 told him he was 56 years of age, and the witness thought he looked about that old.

A woman, a Yugoslavian, living in this country for twenty-five years, residing some time at Helper and there running a boarding house, testified she well knew Joe Lulich; that at the undertaker's at Helper she saw the body of the man who was killed in the mine and that it was Joe Lulich; that she knew him in 1913 at Bingham where she then lived, and that Joe Lulich there boarded at her home for about four months; that she thought he then was about 40 years of age; she identified him in the picture group taken in Bingham in 1915 and stated that he then wore a mustache; that at Bingham, while Lulich was boarding at her house, he received mail from Perusic, Austria, a place not far from where the witness was born; that Joe Lulich boarded at her place at Helper for about ten days before he went to work for the Standard Coal Company, and knew he applied for work and entered such employment under the name of Joe Melich.

A witness at Bingham testified that he received a telephone call from an Austrian at Helper that Joe Lulich was killed and to notify George Yokovich at Dines, Wyo., which the witness did. Yokovich was the person stated in the application of the person killed, to be notified in case of an accident. It was shown that George Yokovich was a cousin of Joe Lulich.

In the death certificate prepared and filed by the physician of the Standard Coal Company it, among other things, was stated the name of the deceased was "Joseph Lulich," the name of his wife, "Katie Lulich," the birthplace of the deceased, Austria; but such matters were so stated as shown by the certificate itself, on information furnished by the woman at Helper who identified the deceased as Joseph Lulich. A certified copy of the certificate was put in evidence. Because such matters were not of personal knowledge of him who prepared the certificate and were only on information furnished him, the certificate is of little, if any, consequence, tending to show that the name of the deceased was Lulich. We may thus as to that lay the certificate aside.

Evidence was given to show that the applicant, Kate Lulich, received almost yearly support from her husband, Joe Lulich, from the time he left Austria to the time of the death of the employee in the employ of the Standard Coal Company. The amounts so received by her were from $50 to $100 a year, and at least one year as high as $200. There is no dispute as to that. There also is no dispute that she had no property of her own, nor any income except that received from her husband, Joe Lulich, and small amounts earned by her working for others. She was of the same age of Joe Lulich, about 59 in 1928.

From the foregoing facts, we think it is quite clear that the deceased was Joe Lulich, the husband of the applicant, Kate Lulich, and that she was dependent upon him for support. While arguments are made by counsel for the coal company respecting discrepancies of testimony of some of the wit-

nesses as to dates, the credibility as to some of them, and the weight to be given their testimony, yet the chief claim made by the coal company that Joe Lulich and Joe Melich were not one and the same person and that the deceased was not the husband of the applicant is principally based on the difference between the age of Joe Lulich, who in 1928 was about 59 years of age, and the age 45 as stated in the application of the deceased in 1928 filed with the Standard Coal Company, and of testimony given by witnesses called by the company, that in their opinion the deceased was only between 45 and 50 years of age, not to exceed 50, and that the deceased was not, or did not look like, the person whose picture in the group was pointed out and identified as Joe Lulich. To support such claim the coal company called its check man at the window as its employees went in and out of the mine. The deceased was in the employ of the company for only 2 days. About 300 employees each day passed before his window. Not anything was made to appear that the witness had any occasion to particularly observe the deceased. The witness testified that he thought the deceased was between 45 and 50 years of age. He was shown the picture pointed out as Joe Lulich in the group taken in Bingham in 1915, and stated that he could not identify the man in the picture as the deceased. The superintendent of the Sweet Coal Company was called, and testified that he was present when the clerk filled out the application of the Joe Melich who was employed by that company, and, according to the best knowledge of the witness, the applicant was about 43 years of age—the age stated in that application—and that he never saw the man whose picture in the group was shown him. Another witness testified that about September 20, 1928, she at Standardville twice saw and talked with the man, who was killed in the mine, and that the witness thought he was "about 48 years of age, not over 50," and, when shown the picture in the group, the witness stated she never had seen that man. Another witness testified that he saw the man two or three different times before he was

killed, passing a little distance from the witness; never talked with him, but thought he was between 45 and 50 years of age and weighed about 150 pounds. An employee of the coal company testified that in September he saw the deceased when he was struck on the tramway causing his death and helped put him on a stretcher when he was taken to the hospital, and in his judgment the deceased was between 45 and 50 years of age.

Such witnesses testified that the deceased was of dark complexion without a mustache or beard, some stating his hair was dark, others did not remember the color of the hair. The physician of the coal company who examined the deceased a few days before he was killed also was called by the coal company. He testified he stripped the deceased to his waist and examined him, including his eyes, skin, muscles, etc.; that the deceased stated his age to be 45; that the witness put his age down at 45, though he thought he was about 50 years of age; that the deceased stated his weight at 155 pounds; and that the witness so put down his weight without weighing him. When shown the picture referred to, he stated the picture did not look very much like the man he examined; that "the man I examined I am sure didn't have any mustache and I can't tell how tall he is. I imagine he was about this height. He looked quite a bit older than the man in the picture. I would say this man looked about 40, the way he looks in the picture, and this other man's face, the man that I examined, had some lines in his face, he looked as if he was 50 years old. I could not swear this is not the fellow, but to the best of my judgment this does not look like the man." The witness further stated that he would not swear that the man he examined was not 55; that he was moderately dark and a little gray, and, as he recollected, his hair was not as black as shown in the picture; that the man he examined had lines across his forehead and across his cheeks, and distinctly remembered he thought the man was worried when he came for his examination. He further testified that many men he examined mis-

stated their age; that he had no occasion to ask very many of them exactly how old they were, and there was no occasion to ask the deceased; that he usually asked them how old they were, "and they say 45, and I look at them again, and they still say 45. Q. And you put it down? A. I put it down—unless they are too feeble to lift a pick and shovel; but I think a man can be in good condition at 50 for work in a mine and probably has more experience than a young fellow." When asked if there was any order at the time that a man over 45 could not be employed, the witness answered, "I dont know whether there was any such order or not. Sort of a tradition, I guess. I never got any order to that effect, but they tell me, it seems to be an impression among workers, that coal companies will not hire anybody over 45. Q. That is coal companies generally? A. Yes, throughout the county. Whether that is true or not, I haven't looked up the law." When told there was not such law, the witness answered, "But the men seem to be of that impression. You don't get one out of a thousand that give their age over 45 or 46 at the most."

We see no substantial conflict between the testimony as presented by the company and the evidence heretofore referred to. The witnesses testifying as to the age of the deceased saw him but once or twice. Testimony of a witness giving his best judgment of the age, when having seen the deceased only once or twice without his attention having been particularly called to the age, and 3 or 4 years thereafter is asked to state the age, is of little probative value. In such case the judgment or estimate of the age of another can only be very general and not with any degree of certainty. Of the witnesses produced by the company, the physician who examined the deceased had the best opportunity to observe his age. His testimony is that it was his best judgment the deceased was 50; that he would not say he was not 55; that the deceased had lines in his forehead and in his cheeks, his hair dark, mixed with a little gray. Even that witness in giving his testimony did not rely on the age given

by the deceased, and looked back 3 or 4 years to recall observations then made as to the apparent age. If the Melich in the employ of the Sweet Coal Company and the Melich in the employ of the Standard Coal Company was the same person as assumed by the company, there is a difference of 2 years as to his age as stated by him in his applications, for in the one he stated his age to be 43 and in the other on the same month and the same year stated his age to be 45. The superintendent of the Sweet Coal Company testified that according to his judgment the applicant was only 43, while the physician of the Standard Coal Company who had the better opportunity of observing and judging the age testified he was 50, probably 55.

Witnesses testifying as to the nonresemblance of the deceased and the picture of the man shown them taken 13 years before the witnesses saw the deceased did so merely from facial appearance and not from other characteristics or descriptions, and seemingly some of them, because the man represented by the picture had a mustache, while the deceased had none. One seeing another once or twice, though only casually, may 3 or 4 years thereafter fairly well remember whether he was tall or short, slender or stout, young or old. However, in such case and under the circumstances disclosed, an attempt to judge the age of a stranger with any degree of certainty from mere appearance is quite another matter. It is common knowledge that some persons at 60 have been taken for 50; others at 60 for 65 or even 70 years of age. The age 50 stated in the application of Joe Lulich filed with the Butte Mutual Bureau in 1924 more nearly represented the age of Joe Lulich, the husband of Kate Lulich, which description otherwise corresponds with the description of Joe Melich filed with the Standard Coal Company. And the description of Joe Melich filed with the Standard Coal Company as to height, weight, color of eyes, complexion, that he was born in "Parucich, Austria," that he was married, that the address of his wife "Katie" was "Parucich, Austria," and dependent upon him for support,

that he had two children, "Steve 25, Helen 21," quite definitely described and pointed to Joe Lulich the husband of the applicant, and, when considered in connection with other evidence heretofore referred to, we, on the record, are of the opinion that it is well established that the employee under the name of Joe Melich in the employ of the Standard Coal Company, and who was killed, was Joe Lulich the husband of the applicant, Kate Lulich; and that the testimony adduced by the coal company as to the apparent age of the deceased is not sufficient to raise a substantial conflict in the evidence justifying a contrary finding, especially in view of the testimony of the physician of the company and of other similar testimony as to the practice of miners over 45 years of age seeking employment with coal companies in the county of Carbon to understate their age on the belief that, if over 45 years of age and the true age stated, they would be denied employment.

The conclusion thus reached by the commission that the deceased was not the husband of the applicant, Kate Lulich, and that she was not dependent upon him for support, is disapproved as being against the evidence, and hence the order denying the applicant compensation is set aside, and the cause remanded to the commission for further proceedings not inconsistent herewith.

EPHRAIM HANSON and MOFFAT, JJ., concur.

FOLLAND, Justice (dissenting).

I cannot agree that the evidence in this record is such as to demand a finding that petitioner was the dependent wife of the deceased, and to permit of no other finding. On September 22, 1928, a man of the Slavonic race was killed in the course of employment in the mine of the Standard Coal Company. In his application for work he had stated his name was Joe Melich, an Austrian, 45 years of age. Kate Lulich of Perusic, Yugoslavia (formerly a part of Austria), age 61 at the time of giving her deposition, is the petitioner

claiming as widow of Joe Lulich, otherwise known as Joe Melich. The important question in the case is whether the deceased workman was the husband of petitioner. I readily agree there was evidence before the commission from which a finding could have been made that the deceased was Joe Lulich, the husband of Kate Lulich, and, if I were permitted to make findings of fact, I would probably so find, but there is also evidence which casts grave doubt on the correctness of such a finding. The commission held ten hearings over a period of 4 years, and made available every reasonable opportunity for petitioner to prove her case. The evidence on many points is in sharp conflict. Many witnesses who knew Joe Lulich, a man who had worked at least part time in the mines at Bingham for many years, said that he had left the old country to come to America in about the year 1901, and some of these witnesses testified he had returned to his native land several times. Petitioner and other witnesses testified that Joe Lulich, the husband of petitioner, left Austria for America in about the year 1911 and that their youngest child was born in 1910. Petitioner said her husband had never returned since first he left. Petitioner's husband is shown, by certified copy of birth record, to have been born in 1867; hence he would have been 61 years of age in 1928. The deceased workman in his application for employment stated he was 45 years of age. Several witnesses who knew him at the Standard mine, including the physician who had examined him physically, and others who knew him at the Sweet mine, testified he appeared to be 45 to 50 years of age.

The question for decision was one of identity. Only one witness was produced who claimed to have known the Joe Lulich who worked at Bingham and also the man who was killed at the Standard mine. She testified he was one and the same person. A great deal of the testimony given by witnesses, called on behalf of petitioner, added to the confusion. It is not for this court to pass on the credibility of witnesses, the weight of the testimony, or to determine

where lies the preponderance of evidence. That duty is exclusively for the Industrial Commission. R. S. Utah 1933, 42-1-79. This court, in a long line of decisions, has refused to substitute its judgment for that of the Industrial Commission in cases involving merely the preponderance of the evidence.

As I view the record before us, we must weigh evidence and pass on credibility of witnesses in order to refuse approval of the decision of the commission. There being evidence of a substantial character which supports the findings, the decision of the commission should be affirmed.

ELIAS HANSEN, Justice (dissenting).

I, too, am of the opinion that the evidence in this case is not such as to demand, as a matter of law, an award of compensation, and therefore the failure of the commission to make an award should not be disturbed.